UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| FITZMARK, LLC, | ) |
| *Plaintiff*, | ) Case No. 1:25-cv-279 |
| v. | ) Judge Atchley |
| NEON LOGISTICS, LLC, | ) Magistrate Judge Steger |
| *Defendant*. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Neon Logistics, LLC's Motion to Stay [Doc. 15] and its Motion for Protective Order. [Doc. 17]. For the following reasons, the Motion to Stay [Doc. 15] is **GRANTED**, and the Motion for Protective Order [Doc. 17] is **DENIED AS MOOT**.

### I. BACKGROUND

This case concerns whether Neon Logistics improperly induced Christian Briar Winston, Nicholas Coker, and James Hunter Zimmerman to breach their Non-Competition, Non-Solicitation, and Non-Disclosure Agreements (individually "Agreement" and collectively "Agreements") with Plaintiff FitzMark, LLC. [*See generally* Doc. 2-1]. FitzMark alleges it previously employed Winston, Coker, and Zimmerman in its Chattanooga office. [*Id.* at ¶¶ 3, 13]. As part of their employment, Winston, Coker, and Zimmerman each signed the Agreements which, among other things, (1) limited their ability to compete with FitzMark both during and after their employment, (2) prohibited them from misusing and/or disclosing FitzMark's confidential information, and (3) limited their ability to recruit or employ FitzMark employees. [*See id.* at ¶¶ 15–20].

Defendant Neon Logistics allegedly caused Winston, Coker, and Zimmerman to violate these obligations. [*See id.* at ¶¶ 21–55]. Two lawsuits followed. First, FitzMark sued Winston and

Coker in Indiana state court on June 14, 2024, alleging both breached their Agreements.[1] [Doc. 16-1]. On January 5, 2025, FitzMark amended the Indiana lawsuit to add a breach claim against Zimmerman, a civil conspiracy claim against all defendants, and tortious interference claims against Winston and Coker. [*See* Doc. 16-4]. Second, FitzMark filed the instant lawsuit against Neon Logistics in Tennessee state court on July 22, 2025, alleging Neon Logistics tortiously induced Winston, Coker, and Zimmerman to breach their Agreements. [*See generally* Doc. 1-1]. Neon timely removed this action to federal court. [Doc. 1]. Now, Neon Logistics moves to stay this action pending resolution of the Indiana lawsuit against Winston, Coker, and Zimmerman, arguing the resolution of FitzMark's breach of contract claims in that case has the potential to fully resolve FitzMark's claims in this case. [Docs. 15, 16]. Neon Logistics further requests the Court stay discovery pending resolution of its Motion to Stay through its Motion for Protective Order. [Doc. 17].

## II.   LAW AND ANALYSIS

FitzMark brings three claims against Neon Logistics, one for Neon Logistics's alleged inducement of Coker to breach his Agreement, [Doc. 1-1 at ¶¶ 56–71], a second for Neon Logistics's alleged inducement of Winston to breach his Agreement, [*id.* at ¶¶ 72–87], and a third for Neon Logistics's alleged inducement of Zimmerman to breach his Agreement, [*id.* at ¶¶ 88–102]. To prevail on each of these claims, FitzMark will need to prove that: (1) a legal contract existed; (2) Neon Logistics knew of the contract; (3) Neon Logistics intended to induce a breach of the contract; (4) Neon Logistics acted maliciously; (5) the contract was breached; (6) Neon Logistics's actions proximately caused the breach; and (7) the breach resulted in damages. *Buddy*

---

[1] This case is styled *FitzMark, LLC, v. Coker*, 49D01-2406-PL-026507 (Ind. Super. Ct., Marion Cnty.).

*Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 359 (Tenn. Ct. App. 1999). The fifth of these elements—that a contract was breached—is key to the instant Motion to Stay.

As the Court has already noted, FitzMark is pursuing breach of contract claims against Winston, Coker, and Zimmerman in Indiana state court. [*See* Doc. 16-4]. These alleged breaches form the basis of FitzMark's claims against Neon Logistics. [*See* Doc. 1-1]. Neon Logistics argues that because resolution of FitzMark's Indiana breach of contract claims may collaterally estop FitzMark from pursuing its claims here, the Court should stay this matter under either the *Colorado River* abstention doctrine or its own inherent authority. [*See generally* Docs. 15, 16]. After careful consideration, the Court finds a stay is appropriate and will therefore use its inherent authority to stay this matter pending resolution of the Indiana lawsuit.[2]

"The Court has inherent authority to stay proceedings 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Glass v. Portfolio Recovery Assocs., LLC*, No. 1:20-CV-283, 2021 WL 6332771, at *2 (E.D. Tenn. Feb. 12, 2021) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). That said, "a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Env't Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977). "[T]he burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Id.* Concerns about the efficient use of judicial resources often play into the analysis as well, but the key inquiry is into the harms the movant and non-movant would suffer based on whether the case between them was stayed. *See Glass*, 2021 WL 6332771, at *2 (noting that "the balance of hardships" is the most important consideration when evaluating whether a stay

---

[2] As the Court is staying this case pursuant to its inherent authority, it does not address whether a stay would also be appropriate under the *Colorado River* abstention doctrine.

under the district court's inherent authority is appropriate); *Anderson v. Jacobs Eng'g Grp., Inc.*, No. 3:19-CV-219-TAV-HBG, 2019 WL 13216606, at *2 (E.D. Tenn. Nov. 20, 2019) ("In making the determination of whether a stay is appropriate, the court must also consider whether the requested stay will further the interest in economical use of judicial time and resources." (internal quotation marks omitted)); *see also Lincoln Mem'l Univ. Duncan Sch. of L. v. Am. Bar Ass'n*, No. 3:11-CV-608, 2012 WL 1108125, at *10 (E.D. Tenn. Apr. 2, 2012) ("Three factors are considered when determining whether to stay an action: (1) potential prejudice to the non-moving party; (2) hardship and inequality to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by the stay." (internal quotation marks omitted)).

Here, the Court finds Neon Logistics has met its burden of showing a stay is warranted. Depending on how the Indiana court resolves FitzMark's breach of contract claims against Winston, Coker, and Zimmerman, FitzMark could be collaterally estopped from pursuing its claims against Neon Logistics. *See Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) ("[W]hen asked to give preclusive effect to a prior state court judgment, a federal court must look to the law of the rendering state to determine whether and to what extent that prior judgment should receive preclusive effect in a federal action."); *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012) (discussing when collateral estoppel applies under Indiana law). In other words, the resolution of the Indiana lawsuit may resolve this case as well. In these circumstances, there is "a pressing need for delay" as it would be unjust to require Neon Logistics to defend itself here where an earlier-filed lawsuit may dictate the result of the claims against it without the need for Neon Logistics to incur the costs associated with discovery and motion practice. *See Anderson*, 2019 WL 13216606, at *2; *Glass*, 2021 WL 6332771, at *4. At the same time, FitzMark would not suffer any material harm if a stay was granted.

FitzMark asserts it would be harmed by a stay because this "is the only forum where [it] can pursue its claims directly against Neon[,]" and "[a] stay would freeze those claims indefinitely while Neon faces no corresponding burden in the Indiana lawsuit." [Doc. 18 at 10–11]. This claimed harm is insufficient to defeat a stay. While FitzMark has a right to a determination of its rights and liabilities without *undue delay*[,]" *Ohio Env't Council*, 565 F.2d at 396 (emphasis added), it does not have a right to a determination of its rights and liabilities with *no delay*, *see Anderson*, 2019 WL 13216606, at *3 (fining defendants would not be harmed by a stay where "[a]side from a general interest in proceeding with the case expeditiously…defendants have not pointed to a specific concern which establishes that it will be injured by a stay."). Here, the delay imposed by a stay would not be undue. Rather, it would be the most efficient way to resolve the issue of whether Winston, Coker, and/or Zimmerman breached their Agreements. And once this issue is resolved, the Court will proceed expeditiously regarding the issue of estoppel and with the litigation of this case more generally. The Court appreciates FitzMark would rather not delay this case, but the Court also finds a delay will not harm FitzMark.

### III. CONCLUSION

Considering the foregoing, the Court finds a stay is appropriate. Accordingly, the Court hereby **ORDERS** the following:

1. Neon Logistics's Motion to Stay [Doc. 15] is **GRANTED**. This matter is hereby **STAYED** pending resolution of the Indiana lawsuit (*FitzMark, LLC, v. Coker*, 49D01-2406-PL-026507 (Ind. Super. Ct., Marion Cnty.)). The remaining deadlines and requirements in the Scheduling Order [Doc. 14] are **SUSPENDED** and the trial and final pretrial conference are **CANCELED**.

2. Given the uncertainty regarding when the Indiana lawsuit will be reduced to judgment, the Court further **DIRECTS** this case be **ADMINISTATIVELY CLOSED** to be reopened upon the conclusion of the Indiana lawsuit.[3]

3. The parties are **ORDERED** to file joint reports regarding the status of the Indiana lawsuit every **60 days** and within **14 days** of the entry of judgment in the Indiana lawsuit.

4. Neon Logistics's Motion for Protective Order [Doc. 17] is **DENIED AS MOOT** as it requested that discovery be stayed pending resolution of the Motion to Stay and this Memorandum Opinion and Order resolves that motion.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[3] "Administrative closures are a tool of docket management." *Rodriguez v. Hirschberg Acceptance Cor.*, 62 F. 4th 270, 274 (6th Cir. 2023). They allow courts to remove cases from their active files without making any final adjudication. *Id.* (quoting *Penn W. Assocs., Inc. v. Cohen*, 371 F.3d 118, 127 (3d Cir. 2004)). "The closing has no effect other than to remove a case from the district court's active docket and permit the transfer of records associated with the case to an appropriate storage repository." *Id.* (cleaned up, citation omitted).